**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYRONE GREEN,** | ) | |
| **Plaintiff** | ) | |
| | ) | **C.A.No. 14-159ERIE** |
| **vs.** | ) | |
| | ) | **District Judge Rothstein** |
| **RAYMOND BURKHART, et al,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that the motion for partial summary judgment filed by the Department of Corrections Defendants [ECF No. 96] be granted in part and denied in part, in the following manner:

-       Summary judgment should be granted in favor of Defendant Haggerty on the retaliation claim based on Plaintiff's placement in the RHU on administrative custody status beginning on February 3, 2014;

-       Summary judgment should be granted in favor of Defendants Chiles, Ennis, and Haggerty on the retaliation claim based on their confiscation of several personal photographs from Plaintiff's cell;

-       Summary judgment should be granted in favor of Defendants Chiles and Gilara as to the retaliation claim based on the removal of Plaintiff's job duties;

-       Summary judgment should be granted in favor of Defendant Gilara on the retaliation claim based on verbal threats he made to Plaintiff;

-       Summary judgment should be granted in favor of Haggerty, Ennis, Horton, Cole and Oberlander on the retaliation claim arising out of the denial of a prompt PRC hearing;

-       Summary judgment should be granted in favor of Haggerty on the retaliation claim arising out of Plaintiff's placement in the RHU rather than the infirmary following the May 6th assault;

1

- Summary judgment should be denied on the retaliation claim against Murin and Zimmer for refusal to provide Plaintiff with copies of request slips;

- Summary judgment should be denied on the retaliation claim against Overmyer, Crowthers, and Chiles based on the denial of a promotional transfer;

- Summary judgment should be granted in favor of Defendant Siegel on the retaliation claim based on the destruction of Plaintiff's boots;

- Summary judgment should be granted in favor of Haggerty, Burkhart, Gilara, Murin and Zimmer on Plaintiff's state law negligence claims arising out of the destruction of personal property; and

- Plaintiff should not be permitted to further amend his complaint to add Sible and Dunlap as Defendants or to expand on the personal involvement of Siegel in the destruction of his boots.

It is further recommended that the motion for summary judgment filed by Defendant Abraham [ECF No. 101] should be granted. Defendant Abraham should be dismissed as a party to this litigation.

By separate Order filed this date, Plaintiff's motion for sanctions [ECF No. 83] is denied.


II.    **REPORT**

   **A.  Relevant Procedural History**

Plaintiff, acting *pro se*, filed this civil rights action on June 4, 2014. The operative complaint in this case is now the "Third Amended Complaint" [ECF No. 65]. See ECF No. 120. In the Third Amended Complaint, Plaintiff names the following as Defendants: Dr. Abraham, as well as Department of Corrections' employees at SCI Forest Raymond Burkhart, Daniel Pack,

John Hagerty, John Gilara, W.D. Cole, Oberlander, J.A. Horton, Lt. Murin, S. Zimmer, Ms. Siegel, Supt. Overmyer, Ms. Crowthers, John Chiles, Paul Ennis, Chernosky, and C/O Miller.[1]

Plaintiff brings multiple claims against multiple Defendants, and a few claims against Defendant Abraham. Defendant Abraham is represented by private counsel, while the majority of the Department of Corrections Defendants is represented by the Office of the Attorney General. Presently pending before this Court are motions for summary judgment by both sets of Defendants, as well as Plaintiff's motion for sanctions based upon spoliation of evidence. These motions are fully briefed and are ripe for resolution by this Court.

### B. Standards of Review

#### 1) *Pro se* litigants

*Pro se* pleadings, however inartfully pleaded, "must be held to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001).

---

[1] The docket reflects that neither Chernosky nor Miller have been served as Plaintiff has not provided this Court with the USM285 forms for service by the U.S. Marshal Service.

See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2) Motion for summary judgment pursuant to Rule 56

Rule 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 258, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a

genuine issue." <u>Garcia v. Kimmell</u>, 2010 WL 2089639, at *1 (3d Cir. 2010) <u>quoting Podobnik v. U.S. Postal Serv.,</u> 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 255 (1986).

### C. Department of Corrections Defendants' motion for summary judgment

Plaintiff raises fifteen claims in this civil action, the majority of which are against the Department of Corrections Defendants. The Commonwealth Defendants move for summary judgment, in whole or in part, on eleven of those claims.[2]

The Commonwealth Defendants move for full summary judgment on the following claims:

- a retaliation claim against Defendant Haggerty based on Plaintiff's placement in the RHU on administrative custody status in February 2014. ECF No. 65, at ¶¶ VII, 1-9.

- a retaliation claim against Chiles, Ennis, and Haggerty based on their confiscation of several personal photographs from Plaintiff's cell. <u>Id</u>. at ¶¶ IX, 1-10.

- a retaliation claim against Chiles and Gilara based on the removal of Plaintiff's job duties. <u>Id</u>. at ¶¶ XI, 1-3.

- a retaliation claim against Gilara based on threats he made against Plaintiff. <u>Id</u>. at XI, 4.

---

[2] The Commonwealth Defendants do not move for summary judgment as to the following claims: 1) a retaliation claim against Burkhart and Pack based on the loss of Plaintiff's personal property. (ECF No. 65, ¶¶ V, 1-10); 2) a retaliation claim against Haggerty based on the failure to return a loaner television (<u>id</u>. at ¶ XIII, 1-2); and 3) a failure to protect claim against Chiles, Chernosky, and Miller arising out of an attack by other inmates in May of 2014 (<u>id</u>. at ¶¶ XIII, 3-8, 10).

- a retaliation claim against Haggerty, Ennis, Horton, Cole, and Oberlander based on the denial of a program review committee hearing. <u>Id</u>. at ¶¶ XIII, 11-19.

- a retaliation claim against Haggerty based on his denial of Plaintiff's need to be housed in the infirmary following an attack by other inmates on May 6, 2014. <u>Id</u>. at ¶ XIII, 9.

- a retaliation claim against Murin and Zimmer based on their refusal to provide Plaintiff with copies of request slips. <u>Id</u>. at ¶ XV, 5.

- a retaliation claim against Overmyer, Crowthers, and Chiles based on the denial of a promotional transfer. <u>Id</u>. at ¶ XV, 6.

- a state law claim against Haggerty, Burkhart, Gilara, Sible, Dunlap, Murin, and Zimmer based on the loss of personal property (television, sneakers, eyeglasses, personal photos, and legal materials). <u>Id</u>. at ¶ XVII.

The Commonwealth Defendants move for summary judgment in part on the following claims:

- a retaliation claim based on the loss of personal property in February 2014. Defendants Sible and Dunlap move for summary judgment, while Defendants Haggerty and Gilara do not. <u>Id</u>. at ¶¶ VII, 9-19.

- a retaliation claim based on the loss or destruction of personal property in May or June of 2014. Defendant Siegel moves for summary judgment, while Defendants Haggerty and Burkhart do not. <u>Id</u>. at ¶¶ XV, 2-4.

**D. Retaliation**

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003) <u>quoting</u> <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-24 (3d Cir. 2000). A retaliation claim is not foreclosed even though the particular privilege that has been taken away does not implicate a constitutional right. <u>See</u> <u>DeWalt v. Carter</u>, 224 F.3d 607, 613 (7th Cir. 2000).

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must show:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). It is Plaintiff's burden to establish the three elements of a *prima facie* retaliation claim.

The filing of grievances or a lawsuit satisfies the constitutionally protected conduct prong of a retaliation claim. Rauser, 241 F.3d at 333; Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). Defendants do not argue that Plaintiff has failed to meet the first element as to any of his retaliation claims.

To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) quoting Allah v. Seiverling, 229 F.3d at 225.

To satisfy the third prong of his retaliation claim, Plaintiff must show a causal connection between his constitutionally protected activity of filing complaints and grievances and the adverse actions he allegedly suffered at the hands of the Defendants. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267-68 (3d Cir. 2007). "In the absence of that proof the plaintiff must show that from the

'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Id.
quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000). The Third Circuit
has emphasized that courts must be diligent in enforcing these causation requirements. Id.

Following the satisfaction of the initial burden, the burden then shifts to the defendants to
demonstrate, by a preponderance of the evidence, that their actions would have been the same,
even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at
158. At this stage, "the prison officials may still prevail by proving that they would have made
the same decision absent the protected conduct for reasons reasonably related to a legitimate
penological interest." Rauser, 241 F.3d at 334. The Third Circuit has specifically recognized
"that the task of prison administration is difficult, and that courts should afford deference to
decisions made by prison officials who possess the necessary expertise." Id.

*A retaliation claim against Defendant Haggerty based on Plaintiff's placement in the RHU on administrative custody status beginning on February 3, 2014.[3]*

Plaintiff alleges that on February 3, 2014, Defendant Haggerty intercepted and read his
legal mail related to a civil rights action against the Department of Corrections. Later that day,
Haggerty ordered that Plaintiff be housed in Administrative Custody. Over the next twenty-four
days in Administrative Custody, Plaintiff was denied phone calls and access to rehabilitative
programs, and had reduced access to commissary, recreation and legal research materials.[4]

---

[3] See ECF No. 65, at ¶ ¶ VII, 1-9.

[4] Plaintiff also claims that while he was in RHU he was forced to move several times and that at
one time, he was placed in a cell that was "not suitable for Plaintiff, who, at the time, was a
Stability Code C." Defendants have provided evidence that Plaintiff was not ever housed in any

8

Without conceding that Plaintiff has satisfied his burden as to the three elements of a *prima facie* retaliation claim, Defendants have presented evidence that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158.

Plaintiff was placed in Administrative Custody in the RHU on February 3, 2014, based upon information provided by another inmate that Plaintiff was in possession of a homemade weapon that Plaintiff had used to threaten the other inmate, and encouraged him to use the weapon to stab a corrections officer. ECF No. 99-2, Declaration of Captain Charles Carter and "Other" Report, pages 2-5. Prison staff investigated the charges and the Security Office was unable to confirm the information provided by the other inmate. At the conclusion of that investigation, Plaintiff was released from Administrative Custody to general population. Id.

Because Defendants have provided evidence that Plaintiff's placement in Administrative Custody on February 3, 2014, was "reasonably related to a legitimate penological interest," they have satisfied their burden to rebut Plaintiff's *prima facie* case as to this claim against Defendant Haggerty. See Rauser, 241 F.3d at 334. Summary judgment should be granted in favor of Defendant Haggerty.

### *A retaliation claim against Chiles, Ennis, and Haggerty based on their confiscation of several personal photographs from Plaintiff's cell.[5]*

---

such cell, but have later provided evidence correcting that misstatement. See ECF No. 111. Defendants move for summary judgment on this claim despite their own contradictory evidence. Summary judgment should be denied both because of the contradictory evidence provided by Defendants and because there is no evidence indicating what "Stability Code C" entails or requires.

[5] See ECF No. 65, at ¶¶ IX, 1-10.

Plaintiff's claim is based on the April 14, 2014, confiscation of his personal property of a large greeting card with thirty-two photographs attached to it. In his own deposition, Plaintiff acknowledges that the photographs were returned to him. ECF No. 99-1, Plaintiff's Deposition, page 52.

The temporary confiscation of photographs is insufficient as a matter of law to satisfy the adverse action prong of a retaliation claim. Huertas v. Sobina, 476 Fed.App'x 981, 983-84 (3d Cir. 2012) (interference with personal mail, confiscation of photographs, and interference with receipt of funds from outside financial institution did not constitute adverse action). Because Plaintiff has not suffered any adverse action as a matter of law, summary judgment should be granted in favor of Defendants Chiles, Ennis, and Haggerty as to this claim.

### *A retaliation claim against Chiles and Gilara based on the removal of Plaintiff's job duties.*[6]

Plaintiff claims that Defendants Chiles and Gilara "removed" him from his "job duties" on April 22, 2014. ECF No. 65, page 13.[7]

Although an inmate does not have a constitutionally protected interest in a prison job, James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989), if he is removed from a prison job for a retaliatory reason, he may have a valid constitutional claim. See Mitchell, 318 F.3d at 530. See also Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (being placed lower on a list of

---

[6] See ECF No. 65, at ¶ ¶ XI, 1-3.

[7] Plaintiff also claims that at this same meeting Defendants issued him an overdue Confiscation Report about the thirty-two photographs taken several days before. Issuing a Confiscation Report, even eight days late, is not adverse to Plaintiff's interests in any way. The issuance of a confiscation report only protects a prisoner's interests in the confiscated property by providing a written record of the confiscation.

persons eligible for promotion qualified as adverse action); <u>Kantamanto v. King</u>, 651 F.Supp.2d 313, 326 (E.D. Pa. 2009) (termination from law library job satisfies the adverse action requirement); <u>Floyd v. Dugal</u>, 2003 WL 23101802, at *7 (E.D. Pa.) (the loss of a job in the dry cleaning facility causing significant loss in pay and forcing inmate into jobs in less interesting environments satisfied the adverse action requirement).

The evidence produced by Defendants shows that Plaintiff was not fired from any job, instead previously permitted additional duties were limited. ECF No. 99-2, page 27. In a grievance response on this issue, Officer Cole explains:

> … [Plaintiff grieves that] Chiles fired him from his 'block worker detail assignments.' [Plaintiff] says for over 2 years he's been a wheelchair pusher and block worker. So for retaliatory reasons Chiles … fired him from his job. […] Chiles reports you were not fired and employment records verify this. Records indicate you haven't been a unit worker since 8/7/12. Since that time, other than when you were employed by Education, you've been a wheelchair pusher. Chiles reports in the past you were permitted to do extra duties on the pod. However, over the past several weeks your behavior has become disruptive and argumentative. As such, you've been limited to primary duties only. I find no evidence you were fired. As the Unit Manager, Chiles has no obligation to allow you to perform duties that you are not formally assigned to. […] You may have been given extra duties in the past. But there is no evidence of retaliation in not assigning you extra duties when your behaviors have become disruptive.

ECF No. 99-2, page 27.

So then, it appears that Plaintiff had been permitted to perform duties beyond his formal job assignment and that due to his "argumentative and disruptive" behavior "over the past several weeks," prison staff limited Plaintiff to his primary job duties. <u>Id</u>. Of course, Plaintiff disagrees with Defendants' position claiming that he was not disruptive and "in fact, Plaintiff has always maintained a positive work report and was even given a pay raise." ECF No. 110, page 5. However, Plaintiff has not provided any evidence in support of his allegation that he was "fired" as he must in order to defeat a well-supported motion for summary judgment. <u>See</u> <u>Celotex</u>.

The evidence supports Defendants' position that their actions were taken for a legitimate reason unrelated to Plaintiff's filing of grievances and lawsuits. Summary judgment should be granted in their favor as to this claim.

### *A retaliation claim against Gilara based on threats he made to Plaintiff.[8]*

Plaintiff alleges that Gilara verbally harassed Plaintiff at or just before the April 22, 2014 meeting. ECF No. 65, page 13. Summary judgment should be granted in favor of Defendant Gilara as to this claim. Verbal harassment is not adverse action. Thomas v. Brinich, 2014 WL 956983, at *5 (M.D. Pa.) citing Marten v. Hunt, 479 Fed.App'x 436 (3d Cir. 2012); Tindell v. Wetzel, 2014 WL 3868240, at *9 (W.D. Pa. 2014) ("It is fairly well-settled … that verbal threats and harassment are not sufficient to constitute adverse action for purposes of stating a retaliation claim.").

### *A retaliation claim against Haggerty, Ennis, Horton, Cole, and Oberlander based on the denial of a program review committee hearing.[9]*

Plaintiff alleges he was denied a PRC hearing following his placement in RHU on Administrative Custody status (after the assault by gang members on May 6, 2014). ECF No. 65, page 17. Plaintiff claims that such a placement normally requires that an inmate be seen by the PRC within seven days and that he was denied a PRC hearing because Defendants falsely claimed that there was a misconduct report pending against him.

In his opposition brief, Plaintiff provides a few more factual details about this claim:

---

[8]  See ECF No. 65, at XI, 4.

[9]  See ECF No. 65, at ¶ ¶ XIII, 11-19.

> "Haggerty and Ennis falsely claimed that Plaintiff had a misconduct which
> precludes PRC review and a hearing within the mandatory seven days per DC-
> ADM 802(A)(4). The retaliatory actions by Defendants Haggerty and Ennis was
> to prevent Plaintiff from being heard by PRC where he could have exposed who
> assaulted him and the prison officials who were involved. Plaintiff's assault was
> never investigated by the Defendants due to the fact that the Defendants did not
> want to risk the one involved being exposed if Plaintiff were to file charges.
> Plaintiff informed Horton, Coles, and Oberlander that he did not have a
> misconduct and that he wanted an investigation, all of which Plaintiff was
> denied."

ECF No. 110.

In their motion for summary judgment, Defendants explain that Plaintiff was placed in

Administrative Custody with an intent to transfer him to another institution for his own

protection and safety. In support of their motion for summary judgment, Defendants point to a

Grievance response on this issue:

> You report that you did not participate in a PRC hearing within seven days of
> your RHU placement because Haggerty and Ennis lied to PRC by stating that you
> had received a misconduct report. … [Y]ou were placed on Administrative
> Custody status on 5/6/14. PRC records indicate you were on the docket to be seen
> on 5/8/14. However, PRC received information that you were placed in pre-
> hearing confinement. Specifically, it was reported that homemade wine was found
> in your property when unit staff packet [sic] it to be sent to the RHU. Oberlander,
> Horton, Ennis, Cole and Chiles all substantiate that this is the information
> received at the time and the reason PRC did not seek you for an administrative
> hearing on 5/8/14.
> Upon review, you were not issued a misconduct. However this was the
> assumption PRC acted under on 5/8/14. … this was simply a mistake based on
> erroneous information, with no intent to harm. … A review of [video footage]
> shows that you were seen on 5/8/14 at your cell by Cole, a PRC member. Absent
> whether or not you were seen by a full PRC hearing board, you were informed of
> PRC's intent to transfer you due to the events of 5/6/14. In fact, records also
> indicate on 5/16/14 you spoke with Crowther and were well aware of PRC's
> intent. Additionally, when PRC did see you for a full administrative hearing, you
> spoke with PRC about the alleged misconduct. Again, you were informed of
> PRC's intent to transfer you for your own safety.
> In fact, during your next meeting with PRC you made no mention of not being
> seen for an administrative hearing in a timely manner. … This writer concedes
> that due to misinformation, you were not seen in a timely manner.

ECF No. 99-2, page 39.

The record reflects that Plaintiff did not receive a PRC hearing within seven days of his placement there. The parties seem to agree that such a denial of a hearing violates internal Department of Corrections' policy. However, the violation of an internal policy **alone** does not automatically constitute adverse action. The evidence indicates that Plaintiff talked to PRC members within the seven day time frame and that Plaintiff was kept abreast of the PRC's intention to transfer him for his own safety. See ECF No. 99-1, pages 60-67; ECF No. 99-2, page 39.

The erroneous denial of this hearing does not constitute adverse action as such a denial would not be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." See Allah v. Al-Hafeez, 208 F.Supp.2d at 535. Moreover, Defendants have produced evidence that Plaintiff was denied the PRC hearing based upon a factual mistake rather than based on any retaliatory animus.

Summary judgment should be granted in favor of Defendants on this claim.

***A retaliation claim against Haggerty based on his denial of Plaintiff's need to be housed in the infirmary following an attack by other inmates on May 6, 2014.[10]***

Following the May 6th attack, Plaintiff was taken to the Medical Department where he received multiple stiches to close the wounds on his head and face. Then, "despite [Dr.] Abraham's and nurses [sic] request to house Plaintiff in the infirmary for observation and continued care," Haggerty "directed that Plaintiff be housed in the RHU."

Plaintiff has not demonstrated that his placement in the RHU rather than the infirmary constituted an adverse action. Moreover, the evidence reflects that Defendant's action would

_____

[10] See ECF No. 65, at ¶ XIII, 9.

have been the same absent Plaintiff's constitutionally protected conduct. The evidence of record reveals that Plaintiff was medically treated and medically cleared before he was placed in Administrative Custody in the RHU. ECF No. 99-2, pages 44-45, 50. The medical records also note that after Plaintiff was told he was going to RHU and not the infirmary, he made additional physical complaints (about left leg weakness). The medical staff re-evaluated Plaintiff's condition and he was again medically cleared for placement in the RHU. Id. at 50.

Plaintiff argues that (now destroyed) video footage would show Abraham and Haggerty talking, allegedly conspiring to place Plaintiff in the RHU. However, this missing evidence is irrelevant to the fact that Plaintiff was medically cleared for RHU placement. At its core, this claim is based on Plaintiff's disagreement with the medical treatment he received following the assault. Even if couched as a "retaliation" claim, the Court will not supplant the treatment protocols of the medical professionals at the institution.

Summary judgment should be granted in favor of Haggerty on this claim.

### A retaliation claim against Murin and Zimmer based on their refusal to provide Plaintiff with copies of request slips.[11]

Plaintiff alleges that "on June 10, 2014, Plaintiff sent legal material and grievance to SCI Forest law library. Plaintiff's legal material was returned to Plaintiff housing unit by Defendant Zimmer and reportedly given to Defendant Murin. Plaintiff never received his legal material which amount to negligence and continued retaliation by prison officials." ECF No. 65, page 21.

Defendants claim there is no adverse action as these documents were returned to Plaintiff. In support of this argument, Defendants point to a Copy Tracking Sheet. ECF No. 99-2, page 52.

---

[11] See ECF No. 65, at ¶ XV, 5.

However, the document does not indicate that the documents were returned to Plaintiff, but only that they were returned to a Unit Manager or Lieutenant. In further support of their position, Defendants point to a grievance response that indicates the documents were returned to Plaintiff by Correctional Officer Friedline. ECF No. 99-2, page 56. However, in opposition, Plaintiff has provided his own declaration swearing that the materials were not returned to him. ECF No. 88, page 8.

Such a disputed issue of fact is fatal to a motion for summary judgment on this claim.

### A retaliation claim against Overmyer, Crowthers, and Chiles based on the denial of a promotional transfer.[12]

Plaintiff alleges that on May 16, 2014, while in the library, "Defendant Overmyer informed Plaintiff that he was not going to support Plaintiff's promotional transfer, this is after Defendants Overmyer, Crowthers and Chiles ensured Plaintiff that they would support Plaintiff promotional transfer. When Plaintiff reminded Defendant Overmyer of his prior support for Plaintiff's promotional transfer, Defendant Overmyer states 'now that you filed all them damn grievances against my staff, that changes the ball game.'" ECF No. 65, page 22.

Defendants argue that Plaintiff has suffered no adverse action; yet, loss of promotional transfer can serve as adverse action for retaliation claim. Walker v. Campbell, 2011 WL 6153104, at *6 (W.D. Pa.). There is evidence that Overmyer had indicated to Plaintiff sometime prior to March 2013, and perhaps even prior to May 2012, that if Plaintiff could "give him two good years" without a misconduct, Overmyer would support a promotional transfer so that

---

[12] See ECF No. 65, at ¶ XV, 6.

Plaintiff could be closer to his elderly and ailing parents. ECF No. 99-1, pages 84-90. This is enough to support the adverse action prong of a retaliation claim.

Next, Defendants argue that Plaintiff was not eligible for a promotional transfer because the regulations provide that an inmate must be misconduct free for five years before such a transfer, a condition which Plaintiff did not meet. However, there is a dispute as to a material fact here as Plaintiff has given sworn testimony that the five-year requirement is not mandatory and that he himself has previously been "swapped" between Wardens without regard to the five-year requirement. Id. at page 86.

Summary judgment should be denied as to this claim.

***A retaliation claim against Correctional Officers Sible, Dunlap, and Defendants Haggerty and Gilara based on the loss of personal property in February 2014.[13]***

Only Sible and Dunlap move for summary judgment here. Plaintiff alleges claims that Correctional Officers Sible and Dunlap were involved in the inventorying of his property that later went missing.

Plaintiff has not named Sible and Dunlap as Defendants to this action. They are not named in the original complaint or the amended complaint. The first time these correctional officers appear in a pleading is the Third Amended Complaint. ECF No. 65. However, Plaintiff did not include either of them on the caption and he did not include either of them in the list of Defendants within the body of the Third Amended Complaint. See ECF No. 3; ECF No. 9. The only mention of Sible and Dunlap is at page 8 and is limited to their involvement in the property inventory. ECF No. 65, page 8. Simply mentioning them within the body of a pleading is not

---

[13] See ECF No. 65, at ¶¶ VII, 9-19.

equivalent to naming them as Defendants to a legal action. Because Sible and Dunlap are not parties to this action, they need not move for summary judgment.

Furthermore, Plaintiff should not be permitted to further amend his complaint to name Sible and Dunlap due to both undue delay and futility of amendment.[14] This case was filed over two years ago and Plaintiff has been permitted several opportunities to amend his original complaint, yet he failed to name these two correctional officers as proper defendants. More importantly, Plaintiff has failed to allege the requisite personal involvement to state a valid § 1983 claim against Sible and Dunlap. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (for an individual to be found liable in a civil rights action, that person "must have personal involvement in the alleged wrongdoing…"). Plaintiff's only allegation is that they were present at the inventory of his personal property that later went missing. See also ECF No. 88, Declaration of Plaintiff, page 3.

### A retaliation claim against Defendant Siegel, Haggerty, and Burkhart based on the loss or destruction of personal property in May or June of 2014.[15]

The only named Defendant moving for summary judgment on this claim is Defendant Siegel. Plaintiff alleges that a pair of his boots were confiscated improperly by another

---

[14] Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure). An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted. In re NAHC, Inc. Securities Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

[15] See ECF No. 65, at ¶ ¶ XV, 2-4.

Defendant, and "on several occasions, Plaintiff instructed … Siegel … to store the boots to be used as evidence in further litigation all of which was ignored by the Defendants which amounts to retaliation and negligence." ECF No. 65, page 21. In his deposition testimony, Plaintiff reiterates the same factual scenario as to Siegel: Plaintiff asked her to hold the boots "to make sure they preserved the boots because I intend to sue if they don't give me my boots back […] She told me that she would contact them, have them hold my boots." ECF No. 99-1, page 80. Plaintiff's boots were later destroyed.

Plaintiff has not demonstrated that Siegel was personally involved in the confiscation or destruction of Plaintiff's boots, nor has he demonstrated that Siegel ever had control or custody of Plaintiff's boots. See generally, ECF No. 88, Declaration of Plaintiff, page 8.

Summary judgment should be granted in favor of Defendant Siegel on this claim. In addition, Plaintiff should not be allowed to amend his complaint to allege the personal involvement of Siegel at this late date, for the same reasons he should not be permitted to further amend his complaint to name Sible and Dunlap.

### E. State law claim of "negligence"

Defendants move for summary judgment on Plaintiff's so-called negligence claim against Haggerty, Burkhart, Gilara, Murin and Zimmer based on the loss of personal property (television, sneakers, eyeglasses, personal photos, and legal materials. [16] ECF No. 65, at ¶ XVII. Defendants argue that they are entitled to sovereign immunity.

---

[16] Here, the Commonwealth Defendants move for summary judgment on behalf of Sible and Dunlap. As explained earlier, Sible and Dunlap are not parties to this case. As they would be entitled to sovereign immunity on this claim, Plaintiff should not be permitted to further amend his complaint to name Sible and Dunlap.

Although Plaintiff entitles this claim as one of negligence, he alleges repeatedly and throughout all his pleadings that Defendants acted purposefully and intentionally to deprive him of his property in retaliation for his myriad grievances and lawsuits. The Commonwealth of Pennsylvania and its employees acting within the scope of their employment enjoy sovereign immunity from suit. 1 Pa.C.S. § 2310. Although there is a statutory exception to sovereign immunity for negligence claims involving the loss or destruction of personal property, Plaintiff's allegations all support legal claims of intentional torts rather than negligence.[17] See Roman v. Swartz, 2013 WL 3982813 (Pa. Cmwlth. 2013). Accordingly, Defendants are entitled to sovereign immunity on these claims and summary judgment should be granted in their favor.

### F. Defendant Abraham's Motion for summary judgment

#### 1. The Claims against Defendant Abraham

Plaintiff's claim against Dr. Abraham is based on the denial of medical care immediately following the attack on May 6, 2014. Plaintiff's original complaint was filed on June 4, 2014, and did not include mention of Dr. Abraham or the denial of medical care arising out of the May 6, 2014 attack. Plaintiff's amended complaint (dated July 29, 2014, and received by this Court on August 1, 2014) is the first time Plaintiff names Dr. Abraham or mentions the May 6th attack.

---

[17] In order to state a claim of negligence under state law, a plaintiff must demonstrate that a "defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage. Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." Roman, 2013 WL 3982803, at *2, quoting Martin v. Evans, 551 Pa. 496, 502 (1998). Plaintiff has not alleged any facts in support of any of the elements of a negligence claim.

Defendant Abraham moves for summary judgment arguing that Plaintiff has failed to exhaust his administrative remedies in accordance with the exhaustion requirements of the Prison Litigation Reform Act.[18]

## 2. The Prison Litigation Reform Act

### a. The Exhaustion Requirement

Failure to exhaust is an affirmative defense that must be pled and proven by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence...that would entitle [them] to a directed verdict if not controverted at trial.' " Foster v. Morris, 208 Fed.App'x 174, 179 (3d Cir. 2006) quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Id. quoting Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992).

The PLRA, 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The Supreme Court has held that the language of this provision "mandates that an inmate exhaust such administrative remedies as are available **before** bringing suit to challenge prison

_____

[18] Defendant Abraham previously filed a dispositive motion on this precise issue. In the Magistrate Judge's Report and Recommendation filed August 11, 2015, this Court recommended that the motion be denied concluding that: "At this stage of the litigation, there is a disputed issue of material fact as to whether all levels of the administrative remedy process were available to Plaintiff. […] The issue of exhaustion may be revisited upon a more fully developed factual record following a formal discovery period." ECF No. 62. The Report and Recommendation was adopted by District Judge Rothstein. ECF No. 72; ECF No. 120.

conditions." <u>Ross v. Blake</u>, ___ U.S. ___, 136 S.Ct. 1850, 1855 (June 6, 2006) (emphasis added).[19]

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. <u>Id</u>. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. <u>Porter v. Nussle,</u> 534 U.S. 516 (2002). However, an inmate need only exhaust those administrative remedies which are "available" to him. <u>See</u> <u>Robinson v. Superintendent, SCI Rockview</u>, ___ F.3d ___, ___, 2016 WL 4010438, at *4 (3d Cir. Jul. 27, 2016) <u>quoting</u> <u>Brown v. Croak</u>, 312 F.3d 109, 113 (3d Cir. 2002) ("[W]e noted that the PLRA requires exhaustion of 'available' administrative remedies and defined such as those that are 'capable of use; at hand.'").

The PLRA requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. <u>Woodford v. Ngo</u>, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." <u>Id.</u> at 83.[20] So then, no analysis of exhaustion may be made absent an

---

[19] The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." <u>Small v. Camden County</u>, 728 F.3d 265, 270 n.3 (3d Cir. 2013). <u>See also</u> <u>Moneyham v. Potter</u>, 2016 WL 3476416, at *3 n.6 (M.D. Pa. June 27, 2016) ("[T]he Supreme Court of the United States has held that PLRA exhaustion is a precondition to suit.").

[20] <u>See also</u> <u>Spruill v. Gillis,</u> 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's

understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

### b. The Administrative Process Available to State Inmates

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, within fifteen days of the incident, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") (formerly known as Central Office) within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001). An inmate may not file the final appeal to SOIGA until he has received a response from the Superintendent.

Records pertaining to the first two levels of administrative review are housed at the prison, while records pertaining to the final level of review are kept at SOIGA. So generally, if

---

legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

the SOIGA does not have an appeal file, the grievance was not fully exhausted through the highest level of review.

### c. The Evidence of Plaintiff's Utilization of the Administrative Remedy Process

The relevant grievance is Grievance Number 514977. The evidence reveals that this grievance was signed and dated by Plaintiff on June 20, 2014, and marked received on June 23, 2014. ECF No. 104-3, page 23. The grievance was denied on its merits in a response dated August 5, 2014. ECF No. 104-3, page 21.

Thereafter, Plaintiff filed an appeal to the Warden. The appeal was dated August 11, 2014, but marked received August 21, 2014. ECF No. 104-3, page 20. This Court notes that the appeal to the Warden was not written on the usual appeal form. ECF No. 104-3, page 20. However, the appeal was not rejected for that or any other procedural reason, but was denied on its merits by decision dated September 11, 2014. ECF No. 104-3, page 19.

Plaintiff did not appeal this to the final level of review at SOIGA before filing this lawsuit. ECF No. 116, Affidavit of Keri Moore, Assistant Chief of SOIGA, pages 1-3. Plaintiff attempted to file this final appeal (along with several others) to the SOIGA in February of 2015, over eight months after he filed this lawsuit. See ECF No. 112-1, page 2.

Summary judgment should be granted in favor of Defendant Abraham as Plaintiff has failed to exhaust the claims against Abraham prior to filing the lawsuit against Abraham. The Amended Complaint is the first time Plaintiff raises a legal claim against Dr. Abraham or mentions the May 8th assault.[21] Plaintiff's motion to amend the complaint was filed on August 1,

_____

[21] Plaintiff's original complaint is dated May 29, 2014. ECF No. 1-1.

2014, and the proposed amended complaint, attached thereto, was dated July 29, 2014. ECF No. 7. This Court granted Plaintiff's motion to amend and the amended complaint was filed on August 13, 2014. ECF No. 9. The evidentiary record before this Court demonstrates that Plaintiff did not properly exhaust the administrative remedy process prior to bringing the claims against Dr. Abraham. Instead, Plaintiff brought the claim against Abraham (at the earliest on July 29, 2014, or at the latest, August 1, 2014) before he received a denial of his initial grievance (dated August 5, 2014).

Plaintiff acknowledges that he did not exhaust his administrative remedies. Instead, Plaintiff opposes the motion for summary judgment arguing that the administrative remedy process was "unavailable" to him in two ways. First, Plaintiff argues that a box containing his legal materials (including documents necessary to pursuing his appeal through the final level of review) was destroyed on July 17, 2014. ECF No. 112, page 2. However, the only document that could have been in the box destroyed on July 17th is Plaintiff's copy of the initial grievance filed in June. Next, Plaintiff argues that his transfer to another institution made the administrative remedy process unavailable to him. Plaintiff claims that he was transferred to another prison before he received the Warden's denial of his appeal, where he had to wait for the response to be forwarded in order to begin the final level of appeal. Neither of Plaintiff's arguments indicates that the administrative remedy process was unavailable to him prior to bringing suit against Defendant Abraham.

Accordingly, Plaintiff has not properly exhausted his administrative remedies as to the legal claim against Defendant Abraham in accordance with the exhaustion requirement of the PLRA. Summary judgment should be granted in favor of Defendant Abraham.

## III.    CONCLUSION

It is respectfully recommended that the motion for partial summary judgment filed by the Department of Corrections Defendants [ECF No. 96] be granted in part and denied in part, in the following manner:

- Summary judgment should be granted in favor of Defendant Haggerty on the retaliation claim based on Plaintiff's placement in the RHU on administrative custody status beginning on February 3, 2014;

- Summary judgment should be granted in favor of Defendants Chiles, Ennis, and Haggerty on the retaliation claim based on their confiscation of several personal photographs from Plaintiff's cell;

- Summary judgment should be granted in favor of Defendants Chiles and Gilara as to the retaliation claim based on the removal of Plaintiff's job duties;

- Summary judgment should be granted in favor of Defendant Gilara on the retaliation claim based on verbal threats he made to Plaintiff;

- Summary judgment should be granted in favor of Haggerty, Ennis, Horton, Cole and Oberlander on the retaliation claim arising out of the denial of a prompt PRC hearing;

- Summary judgment should be granted in favor of Haggerty on the retaliation claim arising out of Plaintiff's placement in the RHU rather than the infirmary following the May 6th assault;

- Summary judgment should be denied on the retaliation claim against Murin and Zimmer for refusal to provide Plaintiff with copies of request slips;

- Summary judgment should be denied on the retaliation claim against Overmyer, Crowthers, and Chiles based on the denial of a promotional transfer;

- Summary judgment should be granted in favor of Defendant Siegel on the retaliation claim based on the destruction of Plaintiff's boots;

- Summary judgment should be granted in favor of Haggerty, Burkhart, Gilara, Murin and Zimmer on Plaintiff's state law negligence claims arising out of the destruction of personal property; and

- Plaintiff should not be permitted to further amend his complaint to add Sible and Dunlap as Defendants or to expand on the personal involvement of Siegel in the destruction of his boots.

It is further recommended that the motion for summary judgment filed by Defendant Abraham [ECF No. 101] should be granted. Defendant Abraham should be dismissed as a party to this litigation.

By separate Order filed this date, Plaintiff's motion for sanctions [ECF No. 83] is denied.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen days.  Any party opposing the objections shall have fourteen days to respond thereto. See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August  11, 2016