UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

TYRONE GREEN, )
 )
    *Plaintiff*, ) C.A. No.    14-159 Erie
 )
v. )
 ) ORDER
 )
RAYMOND BURKHART, et al., )
 )
 )
    *Defendants*. )
_____)

Plaintiff Tyrone Green, a *pro se* prisoner in Pennsylvania, brings the present action under 42 U.S.C. § 1983 alleging violations of his First and Eighth Amendment rights. Specifically, Plaintiff alleges that certain Pennsylvania Department of Correction employees ("the Commonwealth Defendants") acted in retaliation against him for grievances and lawsuits that Plaintiff had previously filed against them (Counts I-VI, VIII-IX, XI-XIV),[1] and that they acted with deliberate indifference to a substantial risk of serious harm to Plaintiff (Count XV). Plaintiff also alleges that Defendant Rami Abraham, a doctor at the prison, acted with deliberate indifference to Plaintiff's serious medical needs (Count VII).[2] Plaintiff further alleges that the Commonwealth Defendants acted negligently when they lost or otherwise destroyed Plaintiff's property (Count X). The Commonwealth Defendants have moved for summary judgment for all

---

[1] Plaintiff, in his Complaint, does not number or otherwise delineate his specific claims. *See* Third Am. Compl., Dkt. 65. The Commonwealth Defendants, in their motion, separate and number Plaintiff's claims as Counts I through XV. Dkt. 97. Plaintiff does not object to this designation. *See* Pl's. Objs., Dkt. 126. For ease of reference, therefore, the Court's Order references Plaintiff's claims as listed in Defendant's motion.

[2] Because Plaintiff, in his Complaint, did not number or otherwise specifically delineate his claims, "Count VII" is brought against all Defendants. *See* Dkt. 65, XV 1. Upon examination, it is clear that this Eighth Amendment claim is against Defendant Abraham only. *See id*. Accordingly, Count VII is dismissed as to the Commonwealth Defendants.

1

of their defendants named in Counts I through X; and for certain Commonwealth Defendants named in Counts XI and XII. Defendant Abraham has moved for summary judgment on the sole count against him, Count VII.

Before the Court is the Report and Recommendation ("R&R") of the Honorable Susan Paradise Baxter, United States Magistrate Judge, recommending that the Court grant summary judgment for Defendant Abraham (Count VII); and grant summary judgment for the Commonwealth Defendants on all but two of the counts on which they have moved. Specifically, Magistrate Judge Baxter recommends that the Court grant summary judgment for the Commonwealth Defendants on Counts I through VI (retaliation claims), and Count X (negligence claim), but deny summary judgment as to Count VIII and IX (retaliation claims). Plaintiff filed objections as to the recommendations regarding Counts I, V, VI, and X (against the Commonwealth Defendants) and Count VII (against Defendant Abraham). The Commonwealth Defendants did not file objections. Having reviewed the Complaint, the parties' briefs, and the R&R, and finding no objection as to the recommendation that the Court grant summary judgment as to Counts II, III, IV and deny summary judgment as to Counts VIII and IX, the Court hereby adopts the decision of the Magistrate Judge as to those counts. Having further reviewed the record and Plaintiff's Objections on the remaining counts at issue, the Court adopts the decision of the Magistrate Judge as to Counts I, V, VI, and X.

## I.  LEGAL STANDARDS

### A.  Standard of Review

When a party objects to an R&R, the district court must review *de novo* those portions of the R&R to which objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673 (1980); Fed. R. Civ. P. 72(b). However, to obtain *de novo* review, a party must clearly and specifically

identify those portions of the R&R to which it objects. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. *Raddatz*, 447 U.S. at 673-74.

## B. Summary Judgment

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990) (citing *Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200, 204 (3d Cir.1987), *cert. denied,* 484 U.S. 1019 (1988)).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted); *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

## II. PLAINTIFF'S RETALIATION CLAIMS

The facts of this case are presented fully in the R&R and in the Court's previous orders. *See* Dkt. 122; *see also* Dkt. 62; Dkt. 72; Dkt. 123. Accordingly, the Court addresses here only

those facts and legal concepts relevant to Plaintiff's objections. Dkt. 126 at 1-4. The gravamen of Plaintiff objections concerns the type—and not the sufficiency—of the evidence put forth by Defendant. *See id*. Specifically, Plaintiff asserts that the relevant claims (Counts I, V, and VI) are (at least primarily) against Defendant John Haggerty, and Haggerty did not "provide a sworn declaration." *Id*. at 2. Thus, Plaintiff asserts, the misconduct reports supposedly written by Haggerty on a given date and submitted to the Court by the Commonwealth Defendants, could have been written by anyone at any time. *See id*. at 2-4. According to Plaintiff, therefore, there exists a genuine dispute of material fact because Plaintiff, in his Complaint and his deposition, swore to the facts alleged while the named Defendant did not. *See id*. Plaintiff is incorrect. There is no such requirement that a particular Defendant produce the relevant record. Moreover, as explained more fully below, the R&R is correct that summary judgment should be granted as to Counts I, V, and VI based on, *inter alia*, the sworn testimony provided by other Commonwealth Defendants.

### A. Legal Standard for Retaliation Claims

"Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling,* 229 F.3d 220, 224–25 (3d Cir.2000) (quoting *Thaddeus-X v. Blatter*, 175 F.3d, 378, 386 (6th Cir. 1999). A prisoner-plaintiff alleging retaliation must make a prima facie showing that he "(1) [engaged in] constitutionally protected conduct, (2) [suffered] an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell*, 318 F.3d at 530 (internal citations omitted).

4

If the plaintiff makes a prima facie showing, the burden shifts to the defendant "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." *Rauser v. Horn*, 241 F.3d 330, 331 (3d Cir. 2001). Thus, "once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id*.

Here, Plaintiff alleges that the Commonwealth Defendants committed their misconduct in retaliation for his having filed grievances and lawsuits against various employees of Pennsylvania's Department of Correction ("DOC") sometime before February 2014. *See* Compl., Dkt. 65 ¶ VII. It is undisputed that a prisoner's filing of a grievance to complain about prison officials' behavior is constitutionally protected conduct. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006). Accordingly, the question before the Court is whether Plaintiff has shown that he suffered an adverse action that was motivated by a desire to punish him for filing grievances and lawsuits; and, if he has, whether, viewing the evidence in the light most favorable to Plaintiff, Defendant would have taken the same disciplinary action even if Plaintiff had not previously filed his grievances and lawsuits. *See*, *e.g.*, *Mitchell*, 318 F.3d at 530.

**B. Plaintiff's Claim That His Placement in the RHU in February 2014 Was Retaliatory (Count I)**

Plaintiff, in his Complaint, alleges that he was placed in Administrative Custody ("AC")[3] in the Restricted Housing Unit ("RHU") on February 3, 2014 in retaliation for his pending grievance lawsuits against DOC employees. Dkt. 65 ¶ VII 1-9. Specifically, Plaintiff alleges that

---

[3] Inmates are placed in AC status when their "presence in general population would constitute a threat to life, property, himself/ herself, staff, other inmates, the public, or the secure or orderly running of the facility." Pa. Dept. of Corrections Administrative Custody Procedures, DC-ADM 802.

5

sometime before February 3, 2014, Defendant Haggerty opened Plaintiff's mail and thereby learned of Plaintiff's pending grievances and lawsuits. *See id*. In retaliation, Plaintiff alleges, Haggerty ordered Plaintiff placed in the RHU. *Id*. The Commonwealth Defendants, in their motion, assert that Plaintiff has produced no evidence suggesting that Haggerty opened Plaintiff's mail, or that Haggerty otherwise knew about Plaintiff's pending lawsuits. Dkt. 97 at 4-6. Further, the Commonwealth Defendants assert, it was facility's Security Office—and not Haggerty—that made the decision to place Plaintiff in AC. *See id*. at 5-6 (citing Carter Decl., Dkt. 99-2 at 2). According to the Commonwealth Defendants, the Security Office made this decision after receiving information from another inmate that Plaintiff possessed a homemade weapon that he had used to threaten another inmate. *Id*. at 5-6 (citing Carter Decl., Dkt. 99-2 at 2; and Haggerty's "Other" Report dated 2/3/14, Dkt. 99-3 at 5). The Security Office conducted an investigation; and, after not being able to confirm the other inmate's report, released Plaintiff back in to the general population. Carter Decl., Dkt. 99-2 at 2. Thus, the Commonwealth Defendants argue, even if Plaintiff met his prima facie burden, the Security Office would have taken the same action of placing Plaintiff in the RHU. Dkt. 97 at 5-6.

Viewing the evidence in the light most favorable to Plaintiff, the Commonwealth Defendants demonstrated that Plaintiff's placement in AC was "reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. Thus, even assuming Plaintiff had met his prima facie burden, the Commonwealth Defendants have demonstrated by a preponderance of the evidence that they would have placed Plaintiff in the RHU even if he had not previously filed his grievances and lawsuits. *See id*. Accordingly, the Court grants summary judgment on Count I.

### C. Plaintiff's Claim That the Timely Denial of a PRC Hearing in May 2014 Was Retaliatory (Count V)

Plaintiff, in his Complaint, alleges that he was (again) placed in the RHU following an assault he suffered on May 6, 2014. Dkt. 65 ¶ XIII 13. While in the RHU, Plaintiff alleges, he was denied a program review committee ("PRC") hearing because Haggerty and Defendant Paul Ennis falsely and in retaliation, told the PRC that Plaintiff had an outstanding misconduct report. [4] Dkt. 65 ¶ XIII 11-19. Plaintiff alleges that he did not, in fact, have an outstanding misconduct report; and, as a result of The Commonwealth Defendants' retaliatory lie, he did not see the PRC within seven days of his placement in the RHU as proscribed by DOC policy. *Id*. The Commonwealth Defendants, in their motion, first assert that Plaintiff's placement in the RHU does not constitute an adverse action; instead, Plaintiff "suffered a beneficial action" because he was placed there for his own protection. Dkt. 97 at 8. Further, the Commonwealth Defendants assert, even if Plaintiff was timely denied a PRC hearing, he eventually saw every PRC member, both individually and as a committee. *Id*. at 8-9. Thus, the Commonwealth Defendants argue, Plaintiff did not meet his prima facie burden. *Id*. at 8-9. In any event, the Commonwealth Defendants argue, they would have placed Plaintiff in the RHU regardless of whether the PRC saw him immediately or whether he had previously filed his grievances and lawsuits. *Id*. at 9.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff did not timely receive a PRC hearing. Dkt. 122 at 14. However, Plaintiff was seen by an individual PRC member on May 8, 2014—two days after his placement in the RHU. Initial Review Response to Grievance 510037, Dkt. 99-2 at 39. Furthermore, Plaintiff was "well aware" of the PRC's intent to transfer

---

[4] The Program Review Committee consists of three staff members who, *inter alia*, conduct AC hearings and otherwise periodically review continued confinement in the RHU. Pa. Dept. of Corrections Administrative Custody Procedures, DC-ADM 801. It is not clear, however, from Plaintiff's Complaint and briefing, how an outstanding misconduct report would affect, let alone delay, an inmate's hearing before the PRC. *See* Dkt. 65; Dkt. 108; Dkt. 126.

7

Plaintiff out of the RHU once it was safe to do so. *Id*. Plaintiff, in his Complaint and briefing, does not allege how a failure to see the full PRC in light of these facts constitutes an adverse action. *See* Dkt. 65; Dkt. 108; Dkt. 126. Accordingly, Plaintiff has not met his prima facie burden. *See Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir. 2009). Thus, the Court grants summary judgment on Count V.

**D. Plaintiff's Claim That His Transfer Out of the Infirmary on May 6, 2014 Was Retaliatory (Count VI)**

Plaintiff, in his Complaint, alleges that following the May 6, 2014 assault, he was prevented from receiving "continued care" in the infirmary and was instead sent to the RHU. Dkt. 65 ¶ XIII 9. Specifically, Plaintiff alleges that Defendant Dr. Rami Abraham and other medical staff "request[ed]" that Plaintiff remain in the infirmary following his attack, but Haggerty, in retaliation, "directed that Plaintiff be housed in the RHU." *Id*. Defendant Abraham, though not named in this retaliation claim, provides information relevant to this claim in his motion regarding the closely-related Count VII. Abraham, in his motion, asserts that he "never planned to keep [Plaintiff] in the infirmary." Dkt. 103 at 13. Additionally, Abraham asserts, Haggerty would not have instructed Abraham to transfer Plaintiff to the RHU because Haggerty is not Abraham's supervisor. *Id*. at 5. Indeed, Abraham is not even a DOC employee. *Id*. According to Abraham, Plaintiff was transferred out of the infirmary after Abraham "medically cleared" Plaintiff. *Id*. Moreover, the Commonwealth Defendants assert, Plaintiff did not suffer any adverse action by being transferred out of the infirmary and into the RHU. Dkt. 97 at 9. It is undisputed that Plaintiff was treated (by Abraham and others) immediately after his attack on May 6, 2014, and again by medical staff the next day. *See* Compl., Dkt. 65 at 15-16; Commonwealth Defs'. Mot., Dkt. 97 at 9 (citing Pl's. Medical Records, Dkt. 99-2 Ex. 11). Further, the Commonwealth Defendants assert, Plaintiff, in his deposition, admitted that his only evidence of Haggerty supposedly ordering

8

Abraham to place Plaintiff in the RHU instead of keeping him in the infirmary stems from a conversation Plaintiff saw—but did not hear—between the two defendants. Dkt. 97 at 9. Accordingly, the Commonwealth Defendants argue, Plaintiff has provided only mere speculation and has not met his prima facie burden. *Id*.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that he has not met his burden of demonstrating that he suffered an adverse action. Plaintiff was treated by Abraham and other medical staff immediately following the attack and the next day after complaining of pain. As explained by Magistrate Judge Baxter, "[a]t its core, this claim is based on Plaintiff's disagreement with the medical treatment he received following the assault." Dkt. 122 at 15. Thus, Plaintiff has not met his burden. *See White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990). Accordingly, the Court grants summary judgment on Count VI.

### III. PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM (COUNT VII)

#### A. Legal Standard for Deliberate Indifference Claims

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, (1976) (internal citation omitted). "This standard has two elements: First, plaintiff must make an '*objective*' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a '*subjective*' showing that defendant acted with 'a sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (emphasis in original) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Deliberate indifference "requires 'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk."

9

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). Deliberate indifference exists "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; [] (3) prevents a prisoner from receiving needed or recommended medical treatment . . . [or (4)] persists in a particular course of treatment in the face of resultant pain and risk of permanent injury. *Rouse*, 182 F.3d at 197 (internal citations omitted). Allegations of medical malpractice, including the misplacement of a prisoner's medical records, an inadvertent failure to provide adequate care, or disagreement among doctors concerning a particular course of treatment, does not amount to cruel and unusual punishment. *See, e.g.*, *id.*; *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993); *White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990).

### B. Plaintiff's Claim That Defendant Abraham Was Deliberately Indifferent to His Serious Medical Needs

Plaintiff, in his Complaint, alleges that following the May 6, 2014 attack, he was taken to the infirmary where he received "multiple stitches" for his injuries. Dkt. 65 at 15. However, Plaintiff alleges, Haggerty instructed Defendant Abraham to prematurely release Plaintiff from the infirmary and place him in the RHU. *Id.* at 19. Additionally, Plaintiff alleges, Plaintiff did not receive medication for his injuries nor proper follow-up care. *Id.* Specifically, Plaintiff alleges that though Abraham later removed the bulk of his stitches, "one stitch was left in causing a cyst to form on Plaintiff's head." *Id.* Thus, Plaintiff argues, by transferring him out of the infirmary and leaving in one stitch, Abraham was deliberately indifferent to his serious medical needs. *Id.* Abraham, in addition to asserting that Haggerty did not—and would not—so order Abraham, *see* section II B, *supra*, in his motion, asserts that Plaintiff did not exhaust his administrative remedies

10

on this issue.[5] Both Abraham and the R&R examine at length whether Plaintiff should be excused from exhausting his administrative remedies because they were unavailable to him. *See* Dkt. 103 at 2-11; Dkt. 122 at 24-25. Magistrate Judge Baxter found that Plaintiff did not exhaust his available remedies and the Court should, therefore, grant summary judgment on Count VII. Dkt. 122 at 25. Plaintiff, in his Objections, asserts only—and for the first time—a (different) reason he could not exhaust his remedies. *See* Dkt. 126 at 6.

The Court need not determine whether there is a genuine dispute of fact concerning whether Plaintiff did, in fact, exhaust his available remedies because the Court finds that Plaintiff has not demonstrated a prima facie case. Plaintiff, in his Complaint, alleges that one stitch was "left in causing a cyst" on his head. Dkt. 65 at 19. Even assuming this type of "cyst" qualifies as a serious medical need, *i.e.*, a "condition [ ] that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death," *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991), Plaintiff's medical records show that he was treated multiple times immediately following the May 6, 2014 attack and in the months thereafter. *See* Dkt. 99-2, Ex. 11. Plaintiff has not alleged, let alone established, that he was refused or otherwise delayed treatment. *See* Compl., Dkt. 65; Pl's Opp., Dkt. 112; Pl's. Dep., Dkt. 99-1. Accordingly, Plaintiff has not met his burden of demonstrating that Abraham was deliberately indifferent to his serious medical needs. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Thus, the Court grants summary judgment on Count VII.

---

[5] Prisoners must, before filing suit, exhaust their available administrative remedies. 42 U.S.C. § 1997e(a). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Available" remedies "need not meet federal standards, nor must they be plain, speedy, and effective." *Id.* Whether a given administrative remedy was "available" to the prisoner-plaintiff "is a question of law," and thus for the court. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (internal quotation omitted).

11

## IV. PLAINTIFF'S NEGLIGENCE CLAIM (COUNT X)

Plaintiff, in his Objections, in addition to asserting that certain defendants did not file sworn declarations, asserts that as a "pro-se litigant [he] does not fully understand the law as it pertains to" the recommendation that the Court grant summary judgment on the negligence claim (Count X). Dkt. 126 at 5. Accordingly, his objections here do not trigger *de novo* review. *See Goney*, 749 F.2d at 6-7. In any event, the R&R is correct that summary judgment should be granted. Though Plaintiff titles this claim as a "negligence" one, upon examination, it is clear that these allegations amount to an intentional tort. *See* Dkt. 65 ¶ XVII. Plaintiff alleges that the Commonwealth Defendants intentionally lost or otherwise destroyed his property. *See id*. "Under Pennsylvania's sovereign immunity statute, 'an employee of the Commonwealth . . . acting within the scope of his or her employment or duties, is protected by sovereign immunity from the imposition of liability for intentional tort claims.'" *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citing *Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc.,* 694 A.2d 1134, 1139 (Pa.Cmmwlth.Ct.1997)). Thus, the Court grants summary judgment on Count X.

## V. CONCLUSION

Having reviewed the R&R, the parties' briefs, Plaintiff's Objections, and all other material before the Court, it is hereby ordered that:

(1) The Court ADOPTS the R&R with respect to the GRANT of summary judgment for Counts I through VII and Count X.

(2) The Court ADOPTS the R&R with respect to the DENIAL of summary judgment for Counts VIII and IX.

(3) Defendant Abraham is DISMISSED from this action.

**IT IS SO ORDERED.**

Dated this 26th day of September, 2016.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE